UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAMERON D. WILLIAMS, ) 5:10CV2029
)
        Petitioner ) JUDGE PATRICIA GAUGHAN
) (Magistrate Judge Kenneth S. McHargh)
        v. )
)
BENNIE KELLY, )
        Warden, )
)
        Respondent ) REPORT AND RECOMMENDED
) <u>DECISION OF MAGISTRATE JUDGE</u>

McHARGH, MAG. J.

      The petitioner Cameron D. Williams ("Williams") has filed a petition pro se

for a writ of habeas corpus, arising out of his 2008 convictions for murder,

aggravated murder, kidnapping, and other crimes, in the Summit County (Ohio)

Court of Common Pleas.  In his petition, Williams raises six grounds for relief:

> 1.  The trial court abused its discretion in refusing to
> allow the jury to consider the charge of Voluntary Manslaughter.
> This is a violation of Cameron [Williams ]'s Fourteenth Amendment
> rights.  The crime of Voluntary Manslaughter is stated as follows:
> Knowingly cause another death while under the influence of
> sudden passion or in a sudden fit of rage brought on by serious
> provocation occasioned by the victim reasonable sufficient to incite
> the offender to use deadly force.
>
> 2.  Appellate counsel was ineffective for failing to
> raise the issue that the Trial Court abused it's discretion in
> refusing to allow the jury to consider the charge of Murder,
> regarding counts (2) and (3) of the Indictment.  This is a violation
> of Cameron's Fourteenth Amendment rights.  The crime of Murder is
> stated as follows; No person shall purposely cause the death of another
> or the unlawful termination of another's pregnancy.

3.  The Court committed reversible error when it
failed to preserve for the record the reason Defendant's initial trial
counsel was removed from the case.  This is a violation of
Cameron's due process and Fourteenth Amendment rights.

4.  Appellate counsel was ineffective for failing to
raise the issue that trial counsel failed to object to the
incompleteness of the record, the removal of Cameron's initial trial
counsel during the arraignments.  Appellate counsel failed to
indicate record would include statement of the evidence App. R.
9(c), App. R. 9(d), failed to raise issue that trial counsel did not
attempt to create an adequate record, failed to raise the material
prejudice resulting from the removal of Cameron's initial counsel.
Appellate counsel failed to raise the issue that trial counsel did not
object to the jury instructions or verdict forms.  This is a violation
of Cameron's Fourteenth Amendment rights.

5.  Appellate counsel was ineffective for failing to
raise the issue that trial counsel did not object to admission of
false evidence.  This is a violation of Cameron's Fourteenth
Amendment rights.

6.  Appellate counsel was ineffective for failing to raise
the issue that Cameron's trial counsel failed to object nor inquire
the fact that Ms. Hughes was released unharmed which is a
violation of Cameron's due process and Fourteenth Amendment
rights.

(Doc. 1, at § 12.)  The respondent has filed an Answer/Return of Writ (doc. 9), and

Williams has filed a Traverse (doc. 15), along with a supplement (doc. 18).


I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural

background:

Tamara Hughes testified that, since her divorce from Williams in July
2005, she had on-again, off-again relationships with both Williams and
Polk.  Williams' statement to police after his arrest was admitted into

2

evidence.  In that statement, Williams admitted that he knew of Hughes' on-going sexual relationship with Polk.  Williams asserted that he and Polk had made verbal threats to one another over the phone for 2 years, while Hughes maintained a relationship with both men.  Hughes testified, and Williams asserted in his police interview, that Williams was familiar with the car that Polk drove.

Hughes testified that she had plans to return from her job in Chicago to her Akron Metropolitan Housing Authority ("AMHA") subsidized housing in Barberton on Friday, July 27, 2007.  She testified that she had only given Williams her daughter's cell phone number as a means of contacting her.  She testified that she had plans to spend the weekend with Polk, and that Williams was not expecting to "hook up" with her that night.

Williams explained to the police the events of the morning of Saturday, July 28, 2007 as follows.  He had obtained a gun about 3 days earlier for the purpose of robbing people to obtain "weed" and crack (cocaine).  On Saturday morning, while "high" from "smokin' weed," he went to Hughes' apartment to talk.  He recognized Polk's car in front of Hughes' apartment.  The video surveillance tape of the housing complex shows Williams going to Hughes' front door, leaving and going to the side of the apartment and then around to the back of the apartment.  Williams admitted, and the surveillance video confirms, that he broke into Hughes' apartment by tearing a screen and entering through the kitchen window.  Williams told the police that he knew Polk was in the apartment and he went upstairs, "praying" that Polk was not in bed with Hughes.

Williams asserted that he entered the apartment to confront both Hughes and Polk, and that he was willing to go with any "flow" that happened.  He admitted during his interview that he entered Hughes' bedroom and was mad when he saw Polk in "his" bed with Hughes.  Williams stated that he leaned over the bed, put the gun to Polk's head and pulled the trigger.  He stated that the gun "clicked" without firing, so he pulled the slide back on the gun to chamber a round and fired 3-4 more times.  Williams stated that Hughes and Polk had awakened after the gun misfired, that he pushed Hughes out of the way, and that he kept firing as Polk rose from the bed and started to approach.  Williams told the police that he "snapped" when he saw Polk's car and "passed out" and "lost it" upon seeing Polk in bed.  Williams told the police that, after shooting Polk, he forced Hughes to get dressed and leave with him.  The surveillance video shows that 84 seconds elapsed

from the time Williams entered Hughes' apartment through the kitchen window until he and Hughes exited the apartment together through the front door.

Hughes testified that she awakened on the morning of July 28, 2007, to find Williams leaning over her bed. She testified that she jumped up, grabbed Williams' arm, and saw his gun. Hughes testified that she tried to calm Williams, but he responded, "No, bitch, I told you." She testified that Williams began firing the gun and that she saw Polk on the floor. Hughes testified that Williams told her:

> "Come on, bitch, get your shit. You gonna get me out of here. You ain't gonna let them catch me. Get your shit on. Let's go, or I'm gonna take your life too. Now, look at that N* * * * *. He dead. Dead. Now what?"

Hughes testified that, after Williams took her from the apartment, she speculated that Polk might still be alive. She testified that Williams told her, "I want that N* * * * * dead." She testified that Williams made her drive the two of them away, cautioning her to obey all traffic laws so as not to call attention to them. Hughes testified that Williams threatened that he would "blow your head off" if the police approached their vehicle.

(Doc. 10, RX 10, at 7-9; State v. Williams, No. 24169, 2009 WL 1856743, at *5-*6 (Ohio Ct. App. June 30, 2009).)

After a jury trial, Williams was convicted of the following:

. . . the lesser included offense of murder in count one; two counts of aggravated murder, plus 2 capital offense specifications and a firearm specification for each count; kidnapping, plus the firearm specification; aggravated burglary, plus the firearm specification; violating a protection order while committing a felony, plus the firearm specification; intimidation of a crime victim while using force or unlawful threat of harm, plus the firearm specification; escape while under detention for a felony of the third, fourth or fifth degree; having weapons while under disability; and carrying a concealed weapon.

(Doc. 10, RX 10, at 4; Williams, 2009 WL 1856743, at *3; see also doc. 10, RX 4.)

Williams received an aggregate sentence of life, with eligibility for parole after

4

sixty-nine years.  (Doc. 10, RX 10, at 4; Williams, 2009 WL 1856743, at *3; see also

doc. 10, RX 5.)

### A.  Direct Appeal

Williams filed a timely direct appeal, setting forth the following five

assignment of errors:

> 1. The Trial Court abused its discretion in refusing to allow the
> jury to consider the charge of voluntary manslaughter.
>
> 2. The Trial Court committed reversible error when it failed to
> preserve for the record the reason Defendant's initial trial
> counsel was removed from the case.
>
> 3. Trial counsel committed rendered ineffective assistance in
> failing to challenge the prior convictions admitted at trial.
>
> 4. The conviction for Violation of a Protection Order is not
> supported by sufficient evidence.
>
> 5. The Trial Court committed error in sentencing Cameron on the
> Kidnapping charge for a felony of the 1st degree rather than a
> felony of the 2nd degree in the absence of the jury making
> specific findings for such increased penalty.

(Doc. 10, RX 7.)  On June 30, 2009, the state court of appeals sustained the fourth

assignment of error, affirmed in part and reversed in part, and remanded the case

to the trial court.  (Doc. 10, RX 10; Williams, 2009 WL 1856743.)

Williams filed an appeal pro se of that decision to the Supreme Court of Ohio,

asserting the following eleven propositions of law, in summary:

> 1.  The trial court abused it's discretion in refusing to allow the jury to
> consider the charge of Voluntary Manslaughter.  [14th Amendment
> due process violation.]

2.  The Trial Court committed reversible error when it failed to preserve for the record the reason Defendant's initial trial counsel was removed from the case.  [14th Amendment due process violation.]

3.  Trial counsel rendered ineffective assistance of counsel in failing to challenge the prior convictions admitted at trial. [Violation of 6th and 14th Amendment rights.]

4.  The Trial Court committed error in sentencing Cameron on the Kidnapping charge for a felony of the 1st degree rather than a felony of the 2nd degree in the absence of the jury making specific findings for such increased penalty.  [14th Amendment due process violation.]

5.  My appellate counsel was ineffective for failing to raise the issue that my trial counsel failed to object nor inquire the fact that Ms. Hughes was released unharmed.

6.  My appellate counsel was ineffective for failing to raise the issue that trial counsel did not object to the incompleteness of the record, the removal of my initial trial counsel during my arraignment on August 10, 2007, August 29, 2007 not September 13, 2007.  My appellate counsel failed to indicate record would include statement of evidence App.R. 9(C), App. R. 9(D), did not raise issue that trial counsel did not attempt to create an adequate record, failed to raise the material prejudice resulting from the removal of my initial trial counsel.  My appellate counsel failed to raise the issue that trial counsel did not object to the jury instructions or verdict forms.

7.  My appellate counsel was ineffective for failing to raise accumulative errors of trial counsel.

8.  My appellate counsel was ineffective for failing to raise the issue that trial counsel did not object to the admission of false evidence.

9.  My appellate counsel was ineffective for failing to raise the issue that trial counsel failed . . . to prove that I lived at 264 Illinois Place, Barberton, Ohio.  Had appellate counsel raised these issues I would've won my appeal because trial counsel's performance allowed me to be convicted of Aggravated Burglary of my own residence.

10.  My appellate counsel was ineffective for failing to litigate propositions 1, 2, 3 and 4 as federal issues.

11.  My appellate counsel was ineffective for failing to raise the issue that the Trial Court abused it's discretion in refusing to allow the jury to consider the charge of Murder, regarding counts (2) and (3) of the Indictment.  [Violation of 14th Amendment rights.]

(Doc. 10, RX 12.)

On Nov. 4, 2009, the Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 10, RX 14; State v. Williams, 123 Ohio St.3d 1473, 915 N.E.2d 1255 (2009).)

Meanwhile, on remand, the trial court had vacated the guilty verdict on violating the protective order, and dismissed the charge due to insufficient evidence. (Doc. 10, RX 15.)

## B.  Rule 26(B) Application to Reopen Appeal

On Sept. 14, 2009, Williams filed an application for reopening pursuant to Rule 26(B), asserting ineffective assistance of counsel on three grounds:

1. Ineffective appellate counsel for failing to raise the issue that, the Trial Court abused its discretion in refusing to allow the jury to consider the charge of Murder, regarding counts (2) and (3) of the Indictment.

2. My appellate counsel was ineffective for failing to raise the issue that my trial counsel were ineffective for failing to object to the removal of my initial trial counsel John Alexander, failed to object to the incomplete record nor attempt to create an adequate record. My appellate counsel was also ineffective for failing to attempt to demonstrate material prejudice.

3. My appellate counsel was ineffective for failing to raise the issue that trial counsel did not object to admission of false evidence.

(Doc. 10, RX 16.)  On Oct. 30, 2009, the court denied the application to reopen.

(Doc. 10, RX 17.)

## C.  Petition for Post-Conviction Relief

Williams had also filed a petition to vacate or set aside judgment pursuant to

Ohio Rev. Code § 2953.21, on Aug. 15, 2008.  (Doc. 10, RX 18.)  Williams argued

ineffective assistance of trial counsel, in that counsel failed to provide or show him

the state's evidence against him, which violated his due process and fair trial rights

insofar as his decision whether or not to take the witness stand.  In his second

claim, Williams argued that he was illegally convicted of Escape, because the GPS

monitoring device was placed on him for an improper period.  The third claim was

ineffective assistance of trial counsel, concerning the lesser included offenses.

On Oct. 30, 2008, the trial court denied his petition.  (Doc. 10, RX 22.)

Williams appealed that judgment, and set forth the following three

assignments of error:

> 1.  Ineffective counsel when trial attorneys failed to provide or show
> me the State's discovery/evidence against me.
>
> 2.  I was illegally convicted of Escape.
>
> 3.  Ineffective counsel when trial attorneys failed to inform me the
> judge had to instruct the jurors on lesser offenses of Murder &
> Manslaughter until after I refused the plea deal of 40 yrs. to Life.

(Doc. 10, RX 24.)  The appeal was dismissed on procedural grounds, and Williams's

motion for reconsideration was dismissed.  (Doc. 10, RX 25-27.)

On Feb. 3, 2009, Williams appealed to the Supreme Court of Ohio, asserting

the following propositions of law:

> 1.  Ineffective counsel when trial attorneys failed to provide or show
> me the State's discovery/evidence against me.

2.  I was illegally convicted of Escape.

3.  Ineffective counsel when trial attorneys failed to inform me the
judge had to instruct the jurors on lesser offenses of Murder &
Manslaughter until after I refused the plea deal of 40 yrs. to Life.

(Doc. 10, RX 29.)

On Apr. 22, 2009, the Supreme Court denied leave to appeal and dismissed

the appeal as not involving any substantial constitutional question.  (Doc. 10, RX

31.)

### D.  Motion for New Trial

Williams filed a motion for leave to file a motion for new trial, and a motion

for new trial, on Feb. 1, 2010.  (Doc. 10, RX 32-33.)  The court denied the motion(s)

on Feb. 8, 2010.  (Doc. 10, RX 35.)

### E.  Motion to Dismiss Indictment

On March 19, 2010, Williams filed a motion to dismiss the indictment, for

failure to charge the mens rea element for one of the charged offenses (aggravated

burglary).  (Doc. 10, RX 37.)  The trial court dismissed the motion on April 6, 2010,

finding that the allegedly faulty indictment should have been attacked on direct

appeal.  (Doc. 10, RX 39.)

Williams filed an appeal on May 7, 2010, setting forth the sole assignment of

error as follows:

The trial court abused its discretion in refusing the dismiss the
aggravated burglary charge due to it lacking the requisite mens rea,
i.e., the knowingly element for the predicate trespass offense, to have
informed proper notice and to charge an offense.

9

(Doc. 10, RX 41.)

On May 14, the state court of appeals advised Williams that his brief was not in compliance with the court's rules, and directed him to file a brief in compliance by May 28, 2010.  (Doc. 10, RX 43.)  On June 29, the court found that Williams had failed to file such a brief, and dismissed his appeal.  (Doc. 10, RX 44.)

On Sept. 10, 2010, Williams filed a petition for a writ of habeas corpus in this court.  (Doc. 1.)

Subsequently, on Jan 27, 2011, Williams filed a motion for resentencing in the state trial court, based on an "allied offenses of similar import" argument under Ohio law.  (Doc. 10, RX 45.)  None of the grounds of the habeas petition concern this claim, thus the motion for resentencing is not relevant to the petition before this court.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as

10

> determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Williams has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993)

11

(strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  JURY INSTRUCTIONS

The first ground of the petition alleges a Fourteenth Amendment violation, that the trial court allegedly "abused its discretion in refusing to allow the jury to consider the charge of Voluntary Manslaughter."  The respondent contends that this ground is not cognizable in habeas, because the failure to instruct on a lesser-included offense is not a constitutional issue.  (Doc. 9, at 15-17.)  The respondent argues that "the failure to instruct on a lesser-included offense can never amount to a constitutional violation in a non-capital case..."  Id. at 15.

Although Williams was not sentenced to death, there can be little question that this case was tried as a capital case.  The indictment contained multiple capital specifications.  See doc. 10, RX 1 and RX 3.  The prosecutor asked the jury to impose the death penalty.  (Doc. 12, Trial transcript, vol. 16, at 1730, 1766.)  The judge instructed the jury on the death penalty.  (Doc. 12, Tr., vol. 16, at 1768, 1773, 1783.)  Although the jury chose not to impose a death sentence, there is no question that at the time that the jury was instructed, Williams faced a possible sentence of death.  Therefore, this is not a "non-capital case," insofar as the jury instructions are concerned.

The Supreme Court in Beck v. Alabama, 447 U.S. 625 (1980), held that "due process requires that a lesser included offense instruction be given when the

12

evidence warrants such an instruction." Hopper v. Evans, 456 U.S. 605, 611 (1982) (discussing Beck).  Such an instruction is required only when there was evidence which, if believed, could reasonably have led to a verdict of guilt of the lesser offense, but not the greater.  Mason v. Brunsman, No. 1:07CV1020, 2009 WL 2169035, at *7, *22 (S.D. Ohio July 16, 2009); see also Palmer v. Bagley, No. 06-3835, 2009 WL 1528503, at *3 (6th Cir. May 29, 2009), cert. denied, 130 S.Ct. 1737 (2010).  A lesser included offense instruction is not required when the evidence does not support it.  Mason, 2009 WL 2169035, at *7, *22.

In Ohio, voluntary manslaughter is not a "lesser-included offense" of aggravated murder, but rather "an inferior degree of aggravated murder." Mason, 2009 WL 2169035, at *20 (citing State v. Tyler, 50 Ohio St.3d 24, 37, 553 N.E.2d 576 (1990)). Under Ohio law,

> The crime of aggravated murder entails knowingly causing the death of another.  [Tyler, 50 Ohio St.3d] at 36-37, 553 N.E.2d 576.  "Voluntary manslaughter consists of knowingly causing the death of another while under the influence of sudden passion or any sudden fit of rage brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the offender into using deadly force." Id.; R.C. 2903.03(A).

> Therefore, in order to be entitled to a voluntary manslaughter instruction, it must have been reasonable for the jury to find [the defendant] knowingly caused the death of [the victim], but under a sudden passion brought about because of serious provocation.  The burden of producing some evidence at trial from which the jury could reasonably make such a finding was on appellant. See State v. Deem (1988), 40 Ohio St.3d 205, 211, 533 N.E.2d 294.

Mason, 2009 WL 2169035, at *20.

The state court of appeals overruled Williams' assignment of error on this

issue, after reviewing the trial evidence, ruling:

> The record indicates insufficient evidence of provocation which was
> reasonably sufficient to arouse the passions of an ordinary person
> beyond the power of his or her control.  See [State v. Shane, 63 Ohio
> St.3d 630, 635, 590 N.E.2d 272 (1992).]  Williams and Hughes were not
> married.  Williams admitted that he knew of Hughes' years-long
> sexual relationship with Polk, so that seeing the two of them in bed
> together could not have aroused in him the shock which accompanies
> an initial revelation.  In addition, Williams recognized Polk's vehicle
> outside of Hughes' apartment and told the police that he knew that
> Polk was inside Hughes' apartment during the early morning hours.
> Armed with that knowledge, and a loaded gun, Williams broke into the
> apartment and went directly to Hughes' bedroom to confront Hughes
> and Polk, and to go with the "flow" of whatever might happen.
>
> While Williams may have been angry that the woman he loved was
> with another man, there is insufficient evidence to indicate that
> Williams was under the influence of sudden passion or rage when he
> shot and killed Polk.  Knowing that Polk was inside Hughes'
> apartment, Williams paced around the outside of Hughes' apartment,
> going first to the front door and then to the back door.  He ripped the
> screen of the kitchen window to facilitate his entry into the apartment
> with the intent of confronting Hughes and Polk.  When he got to the
> bedroom and saw Polk, he put the gun to Polk's head and fired.  The
> gun, however, misfired, giving Williams time to reflect on the
> situation.  Instead, Williams then deliberately pulled the slide back on
> the gun to chamber a round.  Pushing Hughes out of the way to protect
> her, Williams fired multiple shots towards Polk until he ceased his
> approach.  The Ohio Supreme Court has recognized multiple shots or
> stabs as indicative of purpose to kill.  See, e.g., State v. Braden, 98
> Ohio St.3d 354, 785 N.E.2d 439, 2003-Ohio-1325, at ¶ 70; State v.
> Carter (2000), 89 Ohio St.3d 593, 602, 734 N.E.2d 345.  Williams then
> used Hughes to facilitate his escape.  He further voiced his desire that
> Polk be dead and not merely wounded.  This evidence tends to prove
> Williams' purpose to kill Polk rather than that his will was reasonably
> overborne by sudden rage due to any provocation by the victim.
>
> Because reasonably sufficient evidence of provocation was not
> presented, the trial court did not abuse its discretion by refusing to

14

instruct the jury on the inferior charge of voluntary manslaughter. See Shane, 63 Ohio St.3d at 638, 590 N.E.2d 272.

(Doc. 10, RX 10, at 9-11; Williams, 2009 WL 1856743, at *6-*7.)

This court can only grant habeas relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law," as set forth by the holdings of the U.S. Supreme Court, or was "based on an unreasonable determination of the facts" in light of the state court record. Bobby v. Dixon, 565 U.S. ___, 2011 WL 5299458 (2011) (per curiam); Williams, 529 U.S. at 412-13.

The court does not find that the state court's decision applied a rule that contradicted the governing law as set forth in Beck and Hopper. See Williams, 529 U.S. at 405. Nor does the court find that Williams has rebutted the presumption of correctness of the state court's factual findings with clear and convincing evidence. Bowling v. Parker, 344 F.3d 487, 497 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004); Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998), cert. denied, 527 U.S. 1040 (1999); Frazier v. Bobby, No. 3:09CV1208, 2011 WL 5086443, at *12 (N.D. Ohio Oct. 25, 2011) (state court's determination of facts unreasonable if findings conflict with clear & convincing evidence to contrary).

The petition should not be granted on the basis of the first ground.

15

IV.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The second, fourth, and fifth grounds of the petition allege ineffective assistance of appellate counsel.  The respondent contends that these three claims have been procedurally defaulted.  (Doc. 9, at 17-21.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).

This court cannot consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Picard v. Connor, 404 U.S. 270, 274-275 (1971); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).

Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion to re-open his appeal before the Ohio Court of Appeals.  Monzo v. Edwards, 281 F.3d 568, 577 (6th Cir. 2002) (citing State v. Murnahan, 63 Ohio

16

St.3d 60, 584 N.E.2d 1204 (1992)); State v. Davis, 119 Ohio St.3d 422, 426-427, 894 N.E.2d 1221, 1226 (2008); Ohio App. R. 26(B).  Williams filed an application to reopen his appeal pursuant to Ohio App. Rule 26(B) on Sept. 14, 2009 (doc. 10, RX 16), and the court of appeals denied his application on Oct. 30, 2009 (doc. 10, RX 17).

However, Williams did not seek timely review of this denial by the Ohio Supreme Court within 45 days, pursuant to Ohio Supreme Court Rule of Practice 2.2(A)(1).  Williams cannot pursue his Rule 26(B) application any further in state court, because the Supreme Court of Ohio will not entertain a delayed appeal of a Rule 26(B) application.  Amell v. Smith, No. 5:10CV191, 2010 WL 5283295, at *5 (N.D. Ohio Nov. 23, 2010) (defendant may not file delayed appeal in Ohio Supreme Court from Rule 26(B) denial); Hairston v. Kelly, No. 1:10CV19, 2010 WL 2758122, at *3 (N.D. Ohio June 23, 2010); Ohio S.Ct.Prac.R. 2.2(A)(4)(c).)

Although Williams presented his claims of ineffective assistance of appellate counsel through his Rule 26(B) application to reopen his appeal, he did not present the claims in his second, fourth, and fifth grounds to the state high court for review.  Thus, those claims have been not been exhausted, and cannot be considered by this court.

As pointed out by respondent, doc. 9, at 19, Williams did raise several propositions of law concerning ineffective assistance of appellate counsel in his original direct appeal to the state high court.  See doc. 10, RX 12, propositions 6, 8, and 11.  Although Williams attempted to raise the claims in his direct appeal to the

17

Supreme Court of Ohio, those claims were not raised in the court of appeals, and the state high court will not consider a constitutional question which was not raised and argued in the lower courts.  Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007); City of Wooster v. Graines, 52 Ohio St.3d 180, 185, 556 N.E.2d 1163, 1168 (1990) (citing cases); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).  Thus, the claims were not properly presented to the state courts.

The second, fourth, and fifth grounds of the petition have been procedurally defaulted.

## V.  THIRD GROUND

The third ground of the petition is that the trial court "committed reversible error when it failed to preserve for the record the reason Defendant's initial trial counsel was removed from the case," which is allegedly a violation of petitioner's due process and Fourteenth Amendment rights.  The respondent contends that this ground is not cognizable because it does not state a violation of constitutional law. (Doc. 9, at 22.)

Williams argues that his original appointed counsel (John Alexander) was "removed"  by the trial court for reasons that were not placed on the record.  (Doc. 1, memorandum in support, at 18.)  He claims that he desired to continue with this particular appointed counsel, and learned from his (subsequent) counsel that the

18

first attorney had been removed because he was married to a prosecutor who worked in the unit prosecuting Williams' case.  Id. at 18-19.

The memorandum in support of the petition primarily relies on Ohio law in arguing that the record of his state court proceedings did not fully reflect why his trial counsel was replaced.  (Doc. 1, memorandum in support, at 18-21, citing State v. Ashworth, 85 Ohio St.3d 56, 62, 706 N.E.2d 1231, 1237 (1999), cert. denied, 528 U.S. 908 (1999); and State v. Clinkscale, 122 Ohio St.3d 351, 911 N.E.2d 862 (2009); see also doc. 15, at 3.)  As to a possible violation of federal law, the only federal case he cites is Suttles v. Wilson, which he claims reversed a conviction based on an unrecorded conflict of interest.  (Doc. 1, memorandum in support, at 21.)

The state cases referenced by Williams do not support a finding of a constitutional violation in the facts of his case.  In Ashworth, the Supreme Court of Ohio held that "in a capital case, when a defendant wishes to waive the presentation of all mitigating evidence, a trial court must conduct an inquiry of the defendant on the record to determine whether the waiver is knowing and voluntary."  Ashworth, 85 Ohio St.3d at 62, 706 N.E.2d at 1237.  The court noted that the "United States Supreme Court has not directly ruled on the issue presented here."  Id. at 65, 706 N.E.2d at 1239.  A waiver of mitigating evidence is not at issue here.

In Clinkscale, the Supreme Court of Ohio held:  "The proceedings in which a deliberating juror is dismissed in a capital case, and an alternate juror is seated, must be recorded."  Clinkscale, 122 Ohio St.3d at 351, 911 N.E.2d at 863 (syllabus).

19

Dismissal of a juror is not at issue here.  Neither of these cases is relevant to the question of whether the state court's decision here was contrary to, or involved an unreasonable application of, clearly established federal law, as set forth by the U.S. Supreme Court.

In Suttles v. Wilson, the trial court appointed one Annette Powers to be defendant's counsel.  Suttles v. Wilson, No. 06-3585, 2008 WL 2967659, at *1 (6th Cir. Aug. 4, 2008).  The court recognized a possible conflict, and attempted to deal with it as follows:

> At that time, the court recognized that a potential conflict existed for Powers due to her simultaneous representation of one of the State's chief witnesses, George Thomas, in an unrelated felony case. The court attempted to resolve the conflict by ordering another attorney, Renee Green, to cross-examine Thomas at trial.

Suttles, 2008 WL 2967659, at *1.

The Sixth Circuit pointed out that a court should apply a presumption of prejudice when a conflict of interest has been established.  Suttles, 2008 WL 2967659, at *3 (citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980); and Holloway v. Arkansas, 435 U.S. 475, 489-492 (1978).)  The trial court has a duty to inquire into the nature of the conflict when it becomes aware of the potential for conflict of interest.  Suttles, 2008 WL 2967659, at *3 (citing Wood v. Georgia, 450 U.S. 261, 272-274 (1981).)  In that case, because nothing in record reflected an inquiry into counsel's potential conflict of interest, and because the conflict adversely affected counsel's performance, the court found that defendant's conviction should have been reversed.  Id. (citing Mickens v. Taylor, 535 U.S. 162, 173-174 (2002).)

20

Here, the record reflects that appointed counsel Alexander was "permitted to withdraw as counsel," and that Williams, represented by new counsel, entered a plea of Not Guilty at his arraignment. (Doc. 10, RX 2, Journal Entry of Arraignment.) The court of appeals ruled that Williams had failed to object to the appointment of new counsel, neither at his arraignment, nor at a subsequent motion hearing the following month. (Doc. 10, RX 10, at 12-13; Williams, 2009 WL 1856743, at *8.) The court also ruled that Williams failed to demonstrate material prejudice. (Doc. 10, RX 10, at 13; Williams, 2009 WL 1856743, at *8.)

This court further notes that, whatever the extent of the trial court's inquiry into the alleged conflict of interest, Williams has not shown how such a conflict adversely impacted the proceedings where counsel withdrew prior to the arraignment at which Williams entered his not guilty plea. If anything, the trial court's action would seem to be consonant with a presumption of prejudice when a conflict of interest has been raised, as set forth in the Supreme Court precedent discussed in Suttles.

As to Williams' argument that his rights were violated because he desired to continue with a particular appointed counsel, indigent defendants do not have a constitutional right to counsel of their choice. United States v. Marrero, 651 F.3d 453, 464 (6th Cir. 2011), petition for cert. filed (Nov. 9, 2011) (No. 11-7354) (citing Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989)); Wilson v. Parker, 515 F.3d 682, 696 (6th Cir. 2008), cert. denied, 130 S.Ct. 113

21

(2009); Daniels v. Lafler, 501 F.3d 735, 739 (6th Cir. 2007), cert. denied, 552 U.S. 1261 (2008).

The petition should not be granted on the basis of the third ground.  Williams has failed to demonstrate that the state court's action was contrary to, or involved an unreasonable application of, clearly established federal law, as set forth by the U.S. Supreme Court.

## VI.  SIXTH GROUND: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The sixth ground of the petition is:  "Appellate counsel was ineffective for failing to raise the issue that Cameron's trial counsel failed to object nor inquire the fact that Ms. Hughes was released unharmed," an alleged violation of his due process and Fourteenth Amendment rights.  The respondent argues that this ground is procedurally defaulted.  (Doc. 9, at 23-26.)

On direct appeal, Williams raised a related argument as an error by the trial court in sentencing him for the kidnapping as a first degree, rather than second degree, felony.  (Doc. 10, RX 7.)  The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."  Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also Jalowiec v. Bradshaw, No. 1:03CV0645, 2008 WL 312655, at *24 (N.D. Ohio Jan. 31, 2008).  That the factual basis for the theories is

22

related would not save the claim.  Lott v. Coyle, 261 F.3d 594, 607 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002).

In his traverse, Williams "request[s] that Ground Six be dismissed."  (Doc. 15, at 4.)


## VII.  SUMMARY

The petition for a writ of habeas corpus should be denied.

The petition should not be granted on the basis of the first or third grounds because Williams failed to establish that the state court decisions were contrary to, or  involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.

The second, fourth, and fifth grounds of the petition were not properly presented to the state courts, and are procedurally defaulted.  Williams has dismissed his request for relief on the sixth ground.  (Doc. 15, at 4.)

## RECOMMENDATION

It is recommended that petition for a writ of habeas corpus be denied.


Dated:   Nov. 22, 2011                  /s/ Kenneth S. McHargh
                                    Kenneth S. McHargh
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).