**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CAMERON D. WILLIAMS,** | ) | **CASE NO. 5: 10 CV 2029** |
| | ) | |
| Petitioner, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **BENNIE KELLY, WARDEN,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Respondent. | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge McHargh (Doc. 20) recommending denial of Petitioner's pending Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254. Both petitioner and respondent have filed objections to the Report and Recommendation. (Doc. Nos. 21, 22.) For the reasons stated below, the Report and Recommendation is ACCEPTED and the petition is dismissed.[1]

**Standard of Review**

---

[1] Petitioner filed a motion for leave to file a supplemental traverse in connection with the briefing before the Magistrate Judge. (*See* Doc. 19.) Although the Magistrate Judge inadvertently failed to rule on this motion, the Court has considered petitioner's supplemental brief.

1

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636, the district court reviews *de novo* the portion of a report of a magistrate judge to which a specific objection is made. The judge may accept, reject, or modify any proposed finding or recommendation.

**Background**

Petitioner is incarcerated at the Trumbull County, Ohio Correctional Institution. The background facts as to petitioner's incarceration were set forth by the Ohio Court of Appeals in *State v. Williams*, Case No. 24169, 2009 WL 1856743, at *5 (Ohio App. June 30, 2009). Tamara Hughes was divorced from petitioner in 2005. Petitioner knew that Hughes "had on-again, off-again relationships with both [petitioner] and Polk." Petitioner knew of Hughes' on-going sexual relationship with Polk. Petitioner "and Polk had made verbal threats to one another over the phone for 2 years, while Hughes maintained a relationship with both men." Petitioner was also "familiar with the car that Polk drove."

Petitioner explained to police that he "had obtained a gun for the purpose of robbing people to obtain "weed" and crack (cocaine)." On the morning of July 28, 2007, while high from "smokin' weed," petitioner went to Hughes' apartment to talk. He recognized Polk's car in front of Hughes' apartment. Petitioner told police that he knew Polk was in the apartment and went upstairs "praying" that Polk was not in bed with Hughes.

Petitioner entered the apartment to confront Polk and Hughes. He stated that he was willing to go with any "flow" that happened. Petitioner entered Hughes' bedroom and was mad when he saw Polk in "his" bed. Petitioner stated that he leaned over the bed and placed his the gun to Polk's head and pulled the trigger. The gun "clicked" without firing, so petitioner fired 3-4 more times. Petitioner stated that Hughes and Polk awakened after the

gun misfired, that he pushed Hughes out of the way, and that petitioner kept firing as Polk rose from the bed and started to approach petitioner. Petitioner told police that he "snapped" when he saw Polk's car and "passed out" and "lost it" upon seeing Polk in bed with Hughes and that he forced Hughes to get dressed and leave with him.

Hughes testified that she awakened on the morning of July 28, 2007, to find petitioner leaning over her bed. She testified that she jumped up, grabbed petitioner's arm, and saw his gun. Hughes tried to calm petitioner, but petitioner responded, "No, bitch, I told you." Hughes testified that petitioner began firing the gun and that she saw Polk on the floor. Petitioner told Hughes:

> Come on, bitch, get your shit. You gonna get me out of here. You ain't gonna let them catch me. Get your shit on. Let's go, or I'm gonna take your life too. Now, look at that N*****. He dead. Dead. Now what?

Hughes testified that after petitioner took her from the apartment she speculated that Polk might still be alive. Petitioner responded, "I want that N***** dead." Hughes testified that petitioner made her drive the two of them away and cautioned her to obey all traffic laws so as not to call attention to them. Petitioner threatened to "blow [her] head off" if the police approached their vehicle. *State v. Williams*, 2009 WL 1856743, at *6.

Petitioner was charged with three counts of aggravated murder with capital offense specifications, kidnapping, and other crimes. The matter proceeded to trial. During the course of the trial, petitioner requested jury instructions on the lesser included offenses of murder and voluntary manslaughter. The trial court granted the request for a jury instruction on the offense of murder in relation to the first charge of aggravated murder, denied the request as to the other two charges of aggravated murder, and denied petitioner's request for

an instruction on voluntary manslaughter.  Following trial, the jury found petitioner guilty of all charges except the jury found petitioner guilty in count one of the lesser included offense of murder rather that aggravated murder.  Thus, the jury found petitioner guilty of one count of murder; two counts of aggravated murder, plus two capital offense specifications and a firearm specification for each count; kidnapping plus a firearm specification; aggravated burglary plus a firearm specification; violating a protective order while committing a felony plus a firearm specification; escape while under detention for a felony of the third, fourth, or fifth degree; having weapons while under a disability; and carrying a concealed weapon.

The matter proceeded to the mitigation phase.  The jury found, as to both counts of aggravated murder, that the aggravating circumstances did not outweigh the mitigating factors by proof beyond a reasonable doubt and found that "the sentence of life imprisonment without parole eligibility for thirty full years should be imposed."

Petitioner appealed his conviction and sentence, raising five assignments of error:  (1) the trial court abused its discretion in refusing to allow the jury to consider the charge of voluntary manslaughter; (2) the trial court erred in failing to preserve for the record the reason petitioner's initial trial counsel was removed from the case; (3) petitioner's counsel rendered ineffective assistance in failing to challenge prior convictions admitted at trial; (4) petitioner's conviction for violating a protective order was not supported by sufficient evidence; and (5) the trial court erred in sentencing petitioner on the kidnapping charge for a felony of the first degree rather than for a felony of the second degree.  The state court of appeals sustained petitioner's fourth assignment of error only.  On remand, the trial court vacated and dismissed the jury's guilty verdict on the charge of violating a protection order due to insufficient

4

evidence.

Petitioner filed a *pro se* appeal of the state court of appeals decision to the Ohio Supreme Court, which denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. As noted by the Magistrate Judge in the Report and Recommendation, petitioner pursued other relief and post-conviction relief before filing the present *pro se* petition for a writ of *habeas corpus.*

The *habeas* petitioner raises six grounds: (1) the trial court abused its discretion in refusing to allow the jury to consider the charge of voluntary manslaughter; (2) appellate counsel was ineffective in failing to raise on appeal the trial court's refusal to allow the jury to consider the charge of murder regarding counts 2 and 3 of the indictment; (3) the trial court committed reversible error when it failed to preserve for the record the reason petitioner's initial trial counsel was removed from the case; (4) appellate counsel was ineffective for failing to object to the incompleteness of the record and the removal of petitioner's initial trial counsel during the arraignments; (5) appellate counsel was ineffective for failing to raise the issue that trial counsel did not object to admission of false evidence; and (6) appellate counsel was ineffective for failing to raise the issue that petitioner's trial counsel failed to object or inquire into the fact that Hughes was released unharmed.

The Magistrate Judge found none of petitioner's asserted grounds sufficient to support a writ of *habeas corpus*. The Magistrate Judge found petitioner's first and third grounds insufficient because petitioner failed to establish that the state court actions challenged in these grounds were contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. The Magistrate Judge found petitioner's

5

second, fourth, and fifth grounds procedurally defaulted and found that petitioner "has dismissed his request for relief on the sixth ground." (R&R at 23.)

**Discussion**

Petitioner and respondent have both filed objections to the Report and Recommendation. Respondent objects to the Magistrate Judge's determination as to the first ground in that the Magistrate Judge's analysis does not go far enough. Petitioner objects to the Magistrate Judge's determinations on all grounds except the sixth.

*Objections as to Ground One – Jury Instruction on Voluntary Manslaughter*

In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court found that the constitution requires state defendants in capital cases to be afforded the protection of instructions on lesser included offenses when the instructions are supported by the evidence. The state court of appeals in petitioner's case affirmed the trial court's refusal to instruct the jury on voluntary manslaughter. The court of appeals held that the trial court's decision was not an abuse of discretion "[b]ecause reasonably sufficient evidence of provocation was not presented" at trial. *Williams*, 2009 WL 1856743, at *7. In this regard, the Ohio Court of Appeals found:

> The record indicates insufficient evidence of provocation which was reasonably sufficient to arouse the passions of an ordinary person beyond the power of his or her control. William and Hughes were not married. Williams admitted that he knew of Hughes' years-long sexual relationship with Polk, so that seeing the two of theme in bed together could not have aroused in him the shock which accompanies initial revelation. In addition, Williams recognized Polk's vehicle outside of Hughes' apartment during the early morning hours. Armed with that knowledge, and with a loaded gun, Williams broke into the apartment and went directly to Hughes' bedroom to confront Hughes and Polk, and to go with the "flow" of whatever might happen.
>
> While Williams may have been angry that the woman he loved was with

6

>
> another man, there is insufficient evidence to indicate that Williams was under the influence of sudden passion or rage when he shot and killed Polk. Knowing that Polk was inside Hughes' apartment, Williams paced around the outside of Hughes' apartment, going first to the front door and then to the back door. He ripped the screen of the kitchen window to facilitate his entry into the apartment with the intent of confronting Hughes and Polk. When he got to the bedroom and saw Polk, he put the gun to Polk's head and fired. The gun, however, misfired, giving Williams time to reflect on the situation. Instead, Williams then deliberately pulled the slide back on the gun to chamber a round. Pushing Hughes out of the way to protect her, Williams fired multiple shots towards Polk until he ceased his approach. The Ohio Supreme Court has recognized multiple shots or stabs as indicative of purpose to kill. Williams then used Hughes to facilitate his escape. He further voiced his desire that Polk be dead and not merely wounded. This evidence tends to prove Williams' purpose to kill Polk rather than that his will was reasonably overborne by sudden rage to any provocation by the victim.

*Williams*, 2009 WL 1856743, at *6-7 (citations omitted.)

The Magistrate Judge found this determination by the state court of appeals was not an unreasonable application of *Beck* and therefore found petitioner's first asserted ground in petitioner's *habeas* petition insufficient.

Petitioner objects to the Magistrate Judge's determination, arguing that whether the evidence warranted an instruction on voluntary manslaughter "should have been made by the jury" not the trial judge. Petitioner appears to argue that, contrary to the determination of the state court of appeals, there was sufficient evidence of provocation at trial to warrant a jury instruction on voluntary manslaughter. Petitioner asserts:

> [Petitioner] admitted that he knew of Hughes' past sexual relationship with Polk. Not an on-going sexual relationship. Williams had no knowledge that Polk was still involved with Hughes.
>
> The statement Hughes made to the detectives contradicts her testimony. Page 4 of Hughes statement to detectives Hughes asked Cree (her daughter) if [petitioner] had been calling Penny's (her daughter) cell phone. Cree said Yes. Penny called Hughes and Hughes told Penny to have [petitioner] call her (Hughes) but, [petitioner] never called.

7

> The fireman expert's testimony contradicts [petitioner's] assertion that he put the gun to Polk's head and pulled the trigger.  The gun "clicked" without firing, so he pulled the slide back on the gun to chamber a round and fired 3-4 more times.  The firearm expert proved the gun could not make a "click noise" and supports the fact that [petitioner's] statement that he attempted to shoot Mr. Polk was not true.

(Obj. at 1-2.)

The Court does not find petitioner's objection to have merit.  The Court agrees with the Magistrate Judge that the state court did not incorrectly or unreasonably apply *Beck* in refusing to grant petitioner's request for a jury instruction on voluntary manslaughter.  The trial judge reasonably determined that there was insufficient evidence of provocation to support the requested instruction.

Respondent does not object to Magistrate Judge's determination that the state court's decision does not contradict the governing federal law in *Beck*.  However, respondent "objects" to the Magistrate Judge's determination in the R&R on the basis that "ground one is meritless for the *additional* reason that the failure to instruct on voluntary manslaughter cannot be a constitutional violation" because petitioner was not sentenced to death.[2]  (Resp. Obj. at 5) (emphasis added).  In *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990), the Sixth Circuit held that the failure to instruct on a lesser included offense in a non-capital case cannot amount to a constitutional violation.  Respondent cites cases from other circuits for the

---

[2] The Magistrate Judge treated petitioner's case as a capital case for purposes of *Beck*.  The Magistrate Judge stated:  "Although Williams was not sentenced to death, there can be little question that this case was tried as a capital case.  The indictment contained multiple capital specifications.  The prosecutor asked the jury to impose the death penalty.  Although the jury chose not to impose a death sentence, there is no question that at the time that the jury was instructed, Williams faced a possible sentence of death.  Therefore, this is not a "non-capital case," insofar as the jury instructions are concerned."  (R&R at 12.)

proposition that, where a defendant receives a life sentence instead of death, the defendant's case may be treated as a non-capital case for purposes of deciding whether *Beck* applies.  (*See* Resp. Obj. at 2-3.)  However, as respondent concedes, the Sixth Circuit has not decided this issue.  Respondent asserts: "The Sixth Circuit may not be clear on how it would treat this issue where the case is tried as a capital case but the sentence is not death."  (Resp. Obj. at 3.)  Given this, respondent's objection to the Report and Recommendation is overruled.  Respondent has not demonstrated that the Magistrate Judge's treatment of petitioner's case as a capital case for purposes of *Beck* is error.  Furthermore, as stated above, the Magistrate Judge properly determined that petitioner's constitutional rights were not violated by the state court's refusal to instruct on voluntary manslaughter.  It is not necessary for the Court to determine whether petitioner's case should be treated as a capital or non-capital case for purposes of *Beck*.

*Petitioner's Objection as to Ground Three*

In ground three, petitioner challenges the trial judge's conduct in removing his initial trial counsel from his case without failing to preserve on the record the reasons for his counsel's removal.  The Magistrate Judge considered petitioner's arguments as to why this conduct of the trial court violated petitioner's constitutional rights and found that petitioner had not shown that the state court's conduct was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  (R&R at 18-22.)  The Magistrate Judge noted that indigent defendants do not have a constitutional right to counsel of their choice and found that petitioner failed to demonstrate that he suffered any prejudice from the fact that his initial trial counsel was removed from the

9

case "where counsel withdrew prior to the arraignment at which [petitioner] entered his not guilty plea." (R&R at 21.)[3]

In his objections, petitioner asserts that "[t]he trial judge . . . violated Petitioner's constitution[al] right under *Suttles v. Wilson*, [Nos. 06-3585, 06-3652, 2008 WL 2967659 (6th Cir. August 4, 2008)] and *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). . . by failing to place the reasons counsel was removed on the record, as it was apparent that Defense counsel's wife being part of the prosecution team seeking the death penalty created a substantial conflict with Petitioner's defense." (Pet. Obj. at 4.)

Petitioner's objection lacks merit. *Suttles* held that a petitioner was entitled to a writ of *habeas* corpus where the petitioner alleged that his appellate counsel was ineffective for failing to raise a conflict of interest of his trial counsel in representing the government's chief witness against petitioner in an unrelated felony case at the same time counsel was representing petitioner. The court found that this conflict of interest fell below an objective standard of reasonableness and constituted ineffective assistance of counsel and that, pursuant to *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), petitioner was entitled to a presumption of prejudice as a result of counsel's conflict. *Suttles*, 2008 WL 2967659, at *3. In addition, the court held that the trial court "had the duty to inquire into the nature of the conflict at such time as it became aware of the potential for conflict of interest" and that the "[f]ailure of the

---

[3]

As the Magistrate Judge noted, petitioner argued that his original appointed counsel was removed by the trial court for reasons that were not placed on the record, that petitioner claimed he desired to continue with his original counsel, and that he learned from his subsequently appointed counsel that his first attorney had been removed for a potential conflict of interest because he was married to a prosecutor who worked in the unit that was prosecuting petitioner's case. (R&R at 18-19.)

trial court to conduct such an inquiry mandates a reversal if the defendant can show the conflict adversely affected his counsel's performance." *Id*.

*Suttles* is not applicable here. In contrast to the facts in *Suttles*, petitioner's initial counsel who had a potential conflict of interest was *removed* from petitioner's case at an early stage (prior to petitioner's arraignment). Therefore, unlike in *Suttles*, petitioner was not represented at trial by counsel with a conflict of interest. Moreover, unlike in *Suttles*, petitioner identifies no prejudice that petitioner suffered or could have suffered as a result of his original counsel's conflict of interest.[4]

In sum, the Court agrees with the finding of the Magistrate Judge that petitioner has failed to demonstrate that the trial court's conduct (in failing to preserve for the record the reasons petitioner's original counsel was removed from his case) was contrary to or involved an unreasonable application of clearly established federal law.

*Petitioner's Objection as to Grounds Two, Four, and Five*

Petitioner finally objects to the Magistrate Judge's determination that petitioner's second, fourth, and fifth grounds (asserting ineffective assistance of petitioner's appellate counsel) have been procedurally defaulted. The Magistrate Judge found these grounds procedurally defaulted because, although petitioner raised the claims asserted in the grounds with the Ohio Court of Appeals through the filing of a motion to reopen an appeal, petitioner failed to seek timely review of the Ohio Court of Appeals decision denying his motion with the Ohio Supreme Court. Thus, petitioner failed to present his second, fourth, and fifth grounds to the Ohio Supreme Court, rendering the claims procedurally defaulted. (R&R at

---

[4] Indeed, petitioner has stated that he wanted his original counsel to remain on his case.

11

16-18.)

Petitioner objects that his claims should not be considered procedurally defaulted because the Ninth District Court of Appeals failed to provide him timely notice of its decision denying his motion to reopen his appeal and thereby deprived him "of his constitutional right to timely appeal the appellate decision." (Pet. Obj. at 3-4.) Petitioner asserts that "the court's docket sheet clearly shows the clerk entered Petitioner's Judgement [sic] entry on the docket sheet of a different case" and, "[a]s such," he was not notified of "the Judgement Entry" in his case in sufficient time to file a timely appeal. (Obj. at 3.) However, petitioner does not submit evidence that the court of appeals decision in his case was not timely entered on the docket in his case. The online docket of the Ninth District Court of Appeals in petitioner's case properly reflects the court of appeals decision on petitioner's motion to reopen his appeal. Petitioner has not demonstrated a basis to excuse his procedural default.

**Conclusion**

For all of the reasons stated above, none of the objections asserted by respondent or petitioner warrant modification to the determination of the Magistrate Judge. Accordingly, the Report and Recommendation of the Magistrate Judge is hereby accepted, and the pending Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 is dismissed.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/8/12